Alsonidar v. Milne, case number 252417. May it please the court, I would like, are we ready for the time to start? The time is not on. No, your time is on. Oh, I'm sorry. So I would like to address four points. But before beginning, and I know Your Honor had the benefit of when I was here in Al-Mashwali to make this same argument, I want to spend some time to distinguish the cases. And it actually, this case actually highlights one of the points I was trying to make in Al-Mashwali. First of all, in Al-Mashwali, I will acknowledge that there was in fact a, there was a clear discrepancy where he had submitted a death certificate and then later said that, in fact, the wife was the mother of children born after that death certificate. You don't have that in this case, which really highlights this Yemeni adjudication scheme that continues to prejudice U.S. citizens and their families that they're petitioning for overseas. First of all, and we don't have the benefit of the administrative record because the case was dismissed prior to the filing of that. But if we look, when this woman came in and she filled out her DS-260 in 2016, she placed all of her children on the application. She placed her adoptive child. She was very upfront and very truthful on all of the things. And then when she filed the application, all of the stuff was accurate. Yes, we do have a delayed birth certificate. But, and I think one of the points is, that I highlighted in my opening brief, is I think Judge Kennelly really understands how this Yemeni adjudication scheme is working to just continually deny these cases. And one of the biggest issues in Al-Mashwali was he didn't give a written statement. And this court asked me, like, why didn't he give a written statement? Well, here we have a written statement. We not only have a written statement, we have a declaration that was responded to to the RFE. She appeared at the interview. She did the written statement that is required for the Yemeni adjudication scheme. And now we have another issue. Okay, so, oh, but you didn't provide the DNA, which is the biggest issue because the embassy is not collecting DNA. So how do you provide something that's not being done? All of these protections basically, in the Yemeni adjudication scheme, is basically they've completely rewritten the standard. So while the standard should be, even if some doubt, probably too likely or not, if you look, we provided the cable which specifically said that Yemeni cases are adjudicated fraudulent until proven otherwise. Isn't it USCIS's position that, faced with non-contemporaneous documents like birth certificates, that that reflects an absence of the necessary primary evidence? And so isn't it true in every case that the presumption is against finding the family relationship, the parental relationship, in the absence of primary evidence? No, I think there's a different, in these Yemeni cases there's a different presumption because you can submit secondary evidence, which in this case they did. They submitted financial evidence. They submitted declarations. They submitted school records. They submitted pictures. Do we have in the record here, is everything that was either attached to the I-130 or provided in response to the request for evidence in our record here in the appendix? As you know, the administrative record wasn't filed, but we attached it as evidence. So just as a digression then, one of the things that I see in the appendix here is a letter explaining, saying that I've attached a letter from the consul explaining the family book issue and how that works, but I don't actually see in the record a letter from the consul explaining the family book. We don't have that because the administrative record wasn't filed. Okay, so there are things in the administrative record that we don't have. The underlying I-130, we didn't get it until after the appeal was denied. And so some of it we just unfortunately didn't have, so we attached what we had. So can I ask you, do you have the supplemental appendix? Do you have access to that where you are? Yes. Can I ask you to turn to supplemental appendix 44 and just help me understand? I am wanting to make sure I'm understanding the different dates that appear on that. This is for one of the two birth children. You're talking about the family book? No, now I'm talking about the birth certificate because you're not contending that these were contemporaneously issued. Not at all. So help me understand on S.A. 44, it's obvious, there's a number that seems pretty obvious that's the date of birth. I'm on the administrative record 24. I don't see what you're seeing. 44. 44, I apologize. It's EL's birth certificate. Got it. So date of birth in letters, I'm assuming, is the date that this individual was born. Correct. Family civil registry entry, the 1994 date, that's, I presume, the date that they were married or? You mean the date, you're looking at the? Bottom set of box says family civil registration entry and there's a date. Yes. So when the agency was saying, oh, the birth certificate's dated 1994, it was conflating the date of birth and the? Yeah, and this is, they're talking about when the family registered, not when the child's birth certificate was registered. And the family registering, what does that mean? So they, when they got married, they created a family book. So that is not the date of birth. That's the date that the family registry began. Okay. And then under that, it says number 16 under number 183 dated 23-3-98. That's when this was registered, the birth certificate was registered. Okay. And that's one of the things that I think got a little glitchy in the analysis because if this person's date of birth was 2005, then it wouldn't make sense that the birth certificate was registered in 98. Are we confident that that was accurately translated? Pardon? Are we confident that that was accurately translated? I assume so because you haven't? Yeah, it is. I'm looking at the error back and it is. Okay. So I understand that there was an error in the birth certificate. All of that was addressed in the response to the RFE and was secondary evidence. I understand that birth certificates, I don't know if the court is aware, but a baby is born in a village. Someone dies in the village. Couples get married. There's no such thing as documents until someone says, hey, I want to go to Canada, I want to go to America. And then they go with three witnesses and they go to the register and these documents are produced. There's tons of errors. I'm not saying it's not perfect. My issue is once the secondary evidence is provided, the standard for, say, other plaintiffs similarly situated from other countries are then easily adjudicated. In Yemen, they are not. And so all of that evidence, like when you look at this, this woman came in in 2016. She didn't know she was bringing her kids. She properly listed them. She also provided pictures. She provided statements. She provided text messages. She provided financial support. Now, one of the statements, and I understand the explanation, but one of the statements clearly was false insofar as it said we witnessed the birth of the adopted child to this woman, right, that was clearly inaccurate. And the explanation doesn't necessarily inspire a lot of confidence because the explanation was essentially they didn't know they were signing. Actually, what happened is they then submitted declarations in Arabic because the declarations, I think what she understood is these are the children of these women, which you lose a lot in translation. Okay. It was lost in translation that they said that they witnessed the birth of their children? Yeah, I think, and that's why it was important that there was a recorded statement. So what had happened is she was saying these are the children, like these children belong to her, and I don't know because it was in English that that was properly translated. And that's always a problem when you're dealing with translation overseas. But what I do know is subsequent to that, the counselor verified it, and there was declarations from the grandmother and the aunt that were then submitted in Arabic that clearly outlined saying this is what I thought it was, these two children I witnessed the birth, this is an adopted child. So all of that was a discrepancy which was fixed. I mean, the agency can't say right or wrong, but we understand this to be a false declaration, and that casts doubt into the secondary evidence? So now you have two declarations, right? And then mom comes in and gives this sworn statement saying these are my kids. And then she gives all of these pictures, so it's a balancing act. And the standard is even if there is some doubt, you have to give it's more likely than not. So if mom's presenting pictures from the time these kids are babies all the way through, mom listed them on a 2016 application. So you want us to re-weigh that balance. You want us to say, well, you can't just conclude it's false, even though it's false, but there's an explanation and there's additional evidence. So we should re-weigh that balance? No. What I'm addressing is the overall policy that happens in these cases time and time again. And these are the first two cases that I've ever been able to get up to have reviewed because they're always settled. And so this policy is continuous. And so you have a country where people don't issue. This is a policy that is unique. I think the argument is it's with Yemen. Yes. There is very specific. And they allegedly, based on a suit in the Western District of New York, revoked it. But they revoked the policy, but as you can see in this case, because this case was done after the policy, they continue to apply it. For example, all Yemeni cases require DNA. If you don't have DNA, you can guarantee the case is going to get denied. Just to be specific about that, because there's lots of representations in the record to Petitioner that it's voluntary. So you're asserting that, but there was also an evaluation of secondary evidence here, so I'm not sure what the basis would be to conclude that DNA is, on this record, that DNA is required. Except for if you look at the decision in the I-130, and it's specific, I believe it's at 70, I forget if it was 78, but if you look at it, and I'm citing, because there's two children, I'm citing Irjawan. So if you look at the decision, it is 78. If you look at the decision, it says, you were offered the opportunity to do voluntary DNA, and you didn't do it. So if you're basing your decision in denying an application, and we offered to let you do DNA, and you didn't do it, it seems to be, it's not really voluntary. Well, wait a minute, though. I mean, what's challenging about this, I think, is if you had a case where the primary and secondary evidence, or in this case, because it's Yemen, and we're probably not going to get primary evidence, so the secondary evidence is sort of compelling, or there aren't contradictions, or there aren't gaps, then I can understand where you would be able to leverage that into your broader sort of equal protection claim, which is really a macro claim, not about this individual. But ask for secondary evidence. There's a lot of school records, but the school records don't, the only ones that identify her as the mother are the ones during the window of time when this case is being litigated. So you could imagine all the early ones don't do that. There are birth certificates that are not only non-contemporaneous, but have some discrepancies that call them into question. Why, how could we leap to this is a manifestation of a discriminatory policy against Yemeni applicants when there are on its face shortcomings in the application packet that provide an explanation for the decision? What about the fact that there are pictures, there are text messages, there are statements from her? Remember, in al-Mishwali, they said, okay, if he would have given the statement, then this case would have been fine. It wouldn't have ended up here. If he would have given the statement, we would approve it. You have the statement in this case. And so that's what I'm saying. Like it's kind of, and like I said, Kennelly nailed this when he started to understand and see enough of these cases in Illinois. If it's not one thing, it's another. But you're saying that you can't make these challenges because the cases settle, and I'm wondering whether they settle because USCIS realizes that in the cases that settle, the application materials really do support the claim, and the ones that get you here are the ones where there's actually some significant flaws in the application material that would make it hard to rule for. And I don't think this is one of those cases because how do you go from an, like they have the benefit of having mom's application from 2016 listing all of her children, right? So she's already, they always go back and look at these applications. With Yemeni cases, unlike other cases, they always go back and pull all the family records to make sure all of these are together. So there's all this extrajudicial analysis that takes place, and that was there. And the secondary evidence that is required in Yemeni cases far exceeds, remember, we're starting with the standard according to the USCIS regulation that these cases are fraudulent until proven otherwise, not the standard that's written in the statute or is that applied to everybody else, which is even if there's some doubt, it's probably more than not. So when you start having pictures from the time these are kids, you have an old application before mom even dreams of bringing her kids to the United States. I think we've got your argument. Sorry. But you have reserved three minutes to rebuttal. We'll hear from the government and we'll hear again from you. Thank you. Good morning, Your Honors, and may it please the Court. Lauren Bryant on behalf of the government appellee. We're asking that this Court affirm the district court's decision dismissing the complaint pursuant to Rule 12b-6. Turning to the APA claims, Your Honor, I want to stress that it is the petitioner's burden on an I-130 petition to establish by a preponderance of the evidence the familial parent-child relationship. And in this case, that simply was not done, not just in cases involving Yemeni nationals, but in cases involving any I-130 petitioner asserting a claim on behalf of their intended child beneficiaries. The agency considers primary evidence submitted, and if that evidence is deemed insufficient for whatever reason, then secondary evidence is considered by the agency in making its determination. The lower court put it aptly when it stated that the complaint and all of the exhibits attached thereto show a neutral, detailed evidence-gathering process by the agency. Here, the agency looked at the primary evidence that was submitted for all three children, the adopted child and the two biological children. None of the birth certificates were issued contemporaneously with the birth. This doesn't just apply, again, to Yemeni nationals. This is anybody submitting non-contemporaneously issued birth certificates. That will not be deemed conclusive evidence in that case, and so that's when the agency turns to the secondary evidence submitted. The secondary evidence submitted was deemed insufficient by USCIS, and they went through a litany of explanations as to why each piece of secondary evidence submitted was insufficient in this case. So one of the things I'm struggling with is we have this on the pleadings, and one of the questions we're asked to decide is whether the agency's analysis was arbitrary and capricious. We have the agency's statement, but it sounds like we don't have all of the documents that the agency would have reviewed, and so how can we review in this posture, how can we review whether those were arbitrary or capricious? Your Honor, what we do have is about 99 percent of everything that was submitted before the agency, as is evident by the, I'm going to say, 300 to 500-page record here. I'm going to put it together in granular, because the 1 percent that we don't have happens to be something that concerns me. The agency, one of the very significant factors that it cited, the USCIS, had to do with the notion that the family book was predated relative to the date of birth of the child, and that was viewed as something that significantly undermined, it was called false at one point, that that significantly undermined the secondary evidence. We see in the record that we do have that there was a letter purportedly attaching a letter from the consul explaining, no, no, no, you're misunderstanding the way these family books work. Now, if the explanation in that letter coming from an official source completely satisfied any potential concerns that there was something about the family book that was false or misleading or not supportive of their claim, it might have been arbitrary and capricious to ignore that. What am I missing about that particular issue? That's where this Court's deference to the agency's weighing of the evidence comes into play. But we haven't even seen the evidence. It's not a matter of how it weighed the evidence. We don't get to see the evidence. We do usually get to see the evidence it's weighing. USCIS explained in its denial letter, and the BIA did as well when it affirmed that denial, that it weighed the family booklet and I believe the information that was attached there, too. So any translation that would have come from the petitioner, which would have been their burden to translate, anything attached to that. And looking at the family booklet, it wasn't satisfied with any explanation or anything attached to the family booklet. For example, we can see from the record that Selwa and Luft, the mother and father here, were married back in 1987. The family booklet wasn't even created until some 20-odd years later. Why was that not created in time? No, no, it was created in 1994, wasn't it? There seems to be a discrepancy over whether or not the family booklet was created in 1994 or subsequent to that sometime in the mid-2000s. Is the family booklet the same as the family registry and the birth certificate? Maybe we're having it terminological. Well, herein lies the issue, Your Honor, because it would have been the petitioner's burden by when it was attempting to establish that familial relationship based on a preponderance of the evidence to thoroughly explain that. But the record reflects your tribe, and there's this document that explains it that we don't see because it's in the certified administrative record, but it's not in our record here. So it seems like what you're saying is, trust me, the USCIS was reasonable in disregarding or weighing the letter the way it did. No, Your Honor. What I'm saying is that USCIS looked at whatever was provided by the petitioner and determined that that standing alone, because it would have had to, right, because all of the other secondary evidence that was submitted was also not credible or not properly authenticated or missing, had incomplete information. That's one explanation from the petitioner about why there were discrepancies, not just with the marriage registration, but the children's birth registrations for all three children in the family booklet, why there are all these discrepancies and why there are discrepancies with the birth certificates. That alone cannot possibly establish by a preponderance of the evidence this family-based relationship, and it would have to because the primary evidence that was submitted and all of the other secondary evidence submitted was already deemed insufficient. So you have an affidavit from the obstetrician who delivered the two kids who says, I delivered these children to this mother, and that's pretty contemporaneous evidence of the relationship. And if that's not enough, combined with her own statement and other affidavits, it's making me wonder whether the statement that the DNA is voluntary is really true or whether USCIS really does in these cases. And maybe it's because the records from this country are notoriously full of errors, but it does make me wonder whether there's essentially a policy requiring DNA, even if they don't say it. I think we can look at, first of all, Your Honors, there's nothing in the record to suggest that the DNA, the providing of DNA evidence was not on a voluntary basis. It says it exactly there in the USCIS decision. It also, as I, as has previously been conceded, this previous policy that the plaintiff mentions throughout her brief was rescinded an entire year before the adjudication of these applications. So to the extent that USCIS is looking at all of the evidence supplied under a stricter lens pursuant to that policy, there's just, there's nothing besides speculation and conjecture for us to think that they are still secretly applying this policy, even though it's been rescinded a whole year before the adjudication. But further, Your Honor, I think what's important is that USCIS weighed all of this evidence, and it applied the same standard here that it does to every other I-130 applicant, which is that where the primary evidence is insufficient, and we can all agree that it was since the birth certificates were not issued contemporaneously any of them, we have to look and weigh, or the agency has to look and weigh the remainder of the evidence. And it looked to all of the evidence here, the incomplete school records that were supplied, two affidavits which were clearly fraudulent and not credible given Can I ask, in my experience, the government does typically submit the certified administrative record to the district court. Is that your experience as well? It would just depend on the case, Your Honor, what procedural posture it's at. Some cases go forward on a motion to dismiss without the need for an administrative record. So when the government does submit it, for what purpose does it serve? If the government, for example, is moving on for summary judgment as opposed to a motion to dismiss, although I will say in this case And presumably in an APA challenge where there's a contention of arbitrary capriciousness, right? Yes, Your Honor. However, what makes this case unique is that basically all of the documents that were considered by USCIS in rendering its determination were already attached as exhibits to the complaint. So this Court has the benefit of looking Except several of the key ones on which the decision was made. It sounds like, and again, we don't really have an explanation as to why this one, you know, magical document was missing from the entirety of the complaint except for the fact that counsel came in after, but it's still unclear why that wouldn't have been attached in the complaint since they were the ones that brought the suit. That there's some magical document floating out there that would resolve all of these discrepancies. Yet nothing is being suggested that, it's not being suggested that anything was attached or something should have been attached that wasn't, that can resolve any of these other discrepancies in the secondary evidence or the primary evidence that was supplied. The only thing that the appellant is alleging here is that there is some sort of document that resolves some questions about the family ID booklet, but they can't even identify exactly what. And if there was a document that resolved that, wouldn't that have been attached to the complaint? Part of your argument, I take it, is that it's, the petitioner's burden here. Is her burden to provide whatever the documents are that might resolve the issue? Is that right or wrong? Am I right or wrong about that? Well, if we're talking about the burden at the I-130 level, yes, it's her, it's her burden as the petitioner. And on appeal with respect to the record. Well, she's the appellant. So, like, at the, at the complaint stage, anything that would have supported the four corners of the complaint either should have been adequately pleaded or provided to bolster the complaint there. And we have no. But she doesn't have an obligation to provide, for example, the summary judgment record at the pleading. She just needs to plausibly allege. Correct, Your Honor. But she hasn't plausibly alleged any of the claims that she's asserting. Nothing in the complaint suffices for establishing any of the claims upon which relief can be granted. And even if we want, even if the court wanted to remand this back for summary judgment, it would be an exercise in futility, particularly when we consider the fact that this denial does not preclude the petitioner from reapplying for I-130 status for the three beneficiaries with the appropriate paperwork. And, in fact, her husband, Luft, already has pending I-130 petitions on behalf of all three children. So there's nothing stopping this family from coming back with the proper paperwork and documents and affidavits and what have you and curing these numerous defects that are found in the, in their application. So remanding for one more page or two more pages of a record for a document that may or may not resolve these numerous discrepancies would really be an exercise in futility here, Your Honors. And just turning briefly to the equal protections and RFRA claims, Your Honor, again, I think this has also been covered in our, with respect to the APA arguments, but there is nothing to indicate that this particular petitioner was treated any differently than any other I-130 petitioners. As I mentioned, the lower court aptly put it, there's been a neutral detailed evidence-gathering process evident in the four corners of the complaint as well as the exhibits that were attached. This was a collection of primary evidence, which was then deemed insufficient, and then a weighing of the secondary evidence. This is the same process that is applied to all I-130 petitioners, and so there is no basis on which to assert an equal protection claim. And with respect to the RFRA claims, Your Honor, the petitioner has not shown that she sought to engage in the exercise of her religion and that the defendants substantially burdened that exercise. There is no reason that the Sharia religious tenet of guardianship over a child cannot coexist with the Western legal mechanism of adoption. And, in fact, the tenet of Sharia law that the petitioner refers to, which is that the family wouldn't be able to change the prospective adoptee's last name, has actually already been violated here if we look at the birth certificate and the guardianship papers, which were not, by the way, from Salwa, but from Luft. So at the outset, Salwa is not even the appropriate petitioner for the prospective adopted child. But did the agency rely on that fact? On the fact that the last name was changed? No, on the fact that who was the guardianship. Well, yes, Your Honor, because the guardianship, in order to have adoption here for the purposes of bringing the beneficiary, of bringing an I-130 petition for the beneficiary, there needs to be a legal U.S. adoption. And prior to that, we need guardianship papers from Yemen.  So the agency's reasoning was this isn't a legal adoption that we recognize, not that it was adopted by the father rather than the mother. That's all. I just — Well, yes, the agency would have relied on the fact that Luft was the — Would have. — was the proclaimed legal guardian of this child at the outset. So the mother couldn't even be the adopted parent. But second of all, we — because Luft is the purported guardian of this child, then of course Salwa can't be the adoptive mother. Even if the child were able to emigrate to the United States, Salwa wouldn't have been able to obtain adoption unless she had legal adoption papers, legal guardianship papers. If Your Honors have no further questions, we'll rest on our briefs. Thank you. So first of all, I point out missing from the record. And what happened is when they go to the interview, they collect these documents. So I can only recreate what could be — like text messages I can recreate, pictures I can recreate. But when they gave up, they gave up the family book, they gave up the letter from the counsel, they also gave up many of the school records. So I only provided what records we had and the new declarations. So all of that is not in the administrative record. And it wasn't my burden to provide it, although we did our best because we So all of that would have been helpful before making this decision. Second of all, the decisions don't really — they don't articulate why the secondary evidence wasn't good. They just make conclusory statements. One, the declarations were confirmed to provide false information, but they don't reference the new declarations or the explanation. Two, if you look at the family book, it just said the family book was how the children are listed. It doesn't even address the explanation that the RFE gave. Finally, the BAA just basically says the secondary evidence is no good. And, yes, we have filed new I-130s, but that's the cycle. And that cycle — and these will get denied because the first application was denied because of the errors and the false information. And the cycle will go on and on and on and on until these children never get to grow up and live with their parents. Finally, with the RFRA claim, my point is, is that nobody from Yemen can bring an adopted child, and not just because they won't accept the guardianship. And the guardianship has been accepted by Canada as adoption. It's been accepted by France. It's been accepted by several countries. There's a very bad BAA decision that basically says Sharia law does not allow adoption, and that's not the case. And I really believe that we needed some more discovery and to be able to fully articulate that in a further summary judgment motion. Thank you very much. We'll reserve the decision.